Good morning, your honors. My name is Joshua Kim, and I represent Mr. Felix Prescott, the appellant in this case. May it please the court, I'd like to reserve a few minutes, maybe three minutes of my time for rebuttal. May it please the court, I'd like to start with a little bit of context in this case. People like Mr. Prescott, people with past convictions looking for gainful employment, often talk about finding a lucky break. And by that, they mean finding that rare employer who is fully aware of their criminal history but still willing to give them a chance to work and prove themselves. Mr. Prescott found his lucky break. Back in 2006, Ramin Arabshahi, the owner of Advanced Towing, ran a background check on Mr. Prescott, so he knew that Mr. Prescott was still on probation at the time. But still, Ramin decided to hire him. For several years afterwards, Mr. Prescott worked at Advanced Towing, and he proved himself, at least in Ramin's eyes. But this all changed in 2011. One day, Ramin called Mr. Prescott into his office and fired him, saying that he failed the background check. But before there, isn't it true that your client signed a release allowing the background check to be run before the employer, before Advanced Towing called him in and fired him? That's correct, Your Honor. Okay. So the sequence is, there was, everybody knew about the, he and his employer knew about the prior conviction? That's correct, Your Honor. He worked very successfully for a number of years. The policy changed from AAA and Auto Club, so then he signed a release allowing them to run the background check, right? That's right. Okay. Did he see the background check? Who, Your The question is the timing of it. He saw it on Monday, February 14th, Valentine's Day, which is after the higher right adjudicated Mr. Prescott as not meeting the company standard, AAA's criteria. What did he see? Did he see a thumbs-up, thumbs-down adjudication, a pass-fail? Or did he see some kind of a detailed sort of printout of the actual criminal background check? He did not see the adjudication itself. He only saw the consumer report, the detailed list of it. Okay. And actually, that kind of goes to my, the point that I was trying to make. And he didn't contest anything that was contained on the consumer report? No, Your Honor, he did not. Well, that's actually my question. In view of the fact that the information was completely accurate, how is it possible for him to assert that there are timing of the notice? I mean, he's damaged by the change in policy, which is not related to the notice. The fact is, are a little complicated, but I, I'd have to disagree with your presumption that there's nothing inaccurate in the report. As I explain, What is inaccurate in the report? Under the California law, convictions that are older than seven years cannot be reported on consumer report. But the probationary status can be, can't it? But that is not remained on probation, can be, can be reported, I think. No, Your Honor. The plain, if we, you've covered this in your briefing, I think that's a, that's a black letter law question. So if, let's assume if you would, and I, and I've made a note that you, because you covered that pretty extensively in your supplemental briefing, I understand that you disagree with on that Yes, Your Honor. Because your client had a prior conviction, and I think he still was on probation. What are your client's damages? That sounds like a standing question. So we're, let me talk about the purpose of the pre-adversarial notice duty then, and what it's trying to accomplish here. And let me first point to the, the name of the statute that's at issue. It's not an accurate credit reporting act. It is a fair credit reporting act. Accuracy is one of the four values that this act is trying to protect. And the two of them that I can see that are relevant in this case is the relevancy of the consumer information reported and the proper utilization of that information by the user. So the cases talk about, the cases about the FCRA talk about how this pre-adversarial notice requirement is supposed to give a meaningful opportunity, not only to dispute the accuracy of the report, but also to discuss the report with the employer about the relevancy of the information. Right, and that's why it's, I think, particularly difficult for you, because your, your client did catch a lucky break. He had an employer who hired him even knowing he had a prior conviction, and he had an employer who was so sympathetic, and maybe by that time so impressed with your client's work, he was willing to ask for an exception, right, in 2011 or 12, whatever it was, ask for an exception that fell on deaf ears. So what is it that the Fair Credit Reporting Act would have allowed your client to do if he had received earlier notice of the adjudication? What, what opportunity did he lose here? Well, if you rule out the possibility of disputing that old record, the obsolete record from the equation, then not much, except to say that, hey, look, I was convicted more than seven years ago, and I should, before you adjudicate me as not meeting the company standard, be able to talk about what I've done so far. Okay. So he, he would have been able to make his argument to, to AAA, I guess, and to the auto club that the report, because, because higher rights no longer in the case, right? So isn't that right? That is correct. Okay. So the argument is that the policy adopted by the, I'll call them the two clubs, should have required higher right to give him earlier notice of the adjudication? That is correct. So that he could have made his argument to the clubs that this really wasn't a reportable condition after all? Or was he supposed to make that argument to higher right? To higher right. I see. Because the decision-making power is still with higher right. So why do you have a cause of action then against the clubs? Because, well. What gives you a cause of, a cause of action? As I read the statute, the adverse action can only be taken against employee, and he wasn't an employee of the clubs. Well, I would actually point to the footnote one in Said v. MI LLC, which was a decision by this circuit that I submitted not too long ago. This one was made on January 20th, and I submitted a 28-J letter. And in the footnote, in fact, the circuit understands the employment purposes under the Fair Credit Reporting Act as, as not requiring an employer-employee relationship. And in fact, that's been the interpretation of the employer, rather employment purposes under the Fair Credit Reporting Act all this time, at least since Hoek v. Retail Credit Corporation. I believe that's a Fourth Circuit case from back in 1970s. The only case to try and overrule that circuit case is the District Court in Wisconsin Lamson case. And even under the Lamson case, the consumer report at issue in that case was a consumer report obtained by an entity for its independent contractor. So even under that rationale, that ruling does not play in this case because, in fact, Mr. Prescott was an employee of Advanced Towing. But he got a, he got notice. So the policy they adopted did require higher right to give him notice, sorry, the employer, Advanced Towing, to give him notice before they terminated him, and he got that notice. But I think you're making even a more nuanced argument that the policy also should have required advance notice of the adjudication. That is correct, Your Honor. And that follows from the plain language of the statute. And okay, which, what statute are we looking at? We're looking at 15 U.S.C. 1681b, subsection b, 3. Okay, so what's your best authority for the argument that the adjudication itself is an adverse employment action? We don't have, and that's a kind of an interesting case. That would be new law, wouldn't it? It would not be a new law. That would be a law if the court were to issue that opinion. New case law, I mean. Yes. I don't think we've ever gone there in case law. No, that is, in fact, true. That's a novel question for any circuit court. However, district courts have found time and time again that a background check company, higher right in this case, adjudication may in fact be an adverse action. We have cases like Adams, Moore, and I'm blanking on something here, but we have several cases that we cited too that talked about how, Manuel v. Wells Fargo, that talked about how the adjudication itself can be an adverse action, and that follows directly from the plain language of the statute. An adverse action is broadly defined to include, especially in the employment context, to include any other decision. Any other decision that adds... But they're for employment purposes that adversely affect any current or prospective employee. Does that apply to somebody? Does that apply to somebody who's making a decision about somebody who's not their employee? Yes, sir. I understand why higher right is on the hook here, and if higher right is violating FCRA, then I think they've got a choice as to whether they keep your client on and give up their contract with AAA, or whether they keep the contract with AAA and suffer whatever consequences they've got in the suit from Mr. Prescott. But I don't understand why AAA is on the hook when it doesn't have the power to take an adverse action. It has a contractual relationship with higher right. I respectfully disagree that they don't have the power to take an adverse action. The confusing thing about this, the reason I guess that Judge Christy is saying that I'm making a nuanced argument is because it's not clear, and it's my fault for not making it clear, that there are two independent decisions at play here. One is AAA's decision under their criteria, made according to their explicit instructions to higher right, and the other is Ramin's criteria. So in order to illustrate this, let me give a bit of a hypothetical. If in fact the Auto Club had said, yeah, you know what, Mr. Prescott, you pass our criteria, can Ramin then turn around and say, I don't care about AAA's criteria, I saw the report, I'm still going to fire you? He can't do that. Of course. In that case, AAA would not have taken any adverse action, would not have made any adverse decision based on that report, but Ramin would have. And this is a reverse situation. Ramin did not even use the report because under the policy for that independent decision by the Auto Club. But AAA doesn't have the power to fire Mr. Prescott. He's not their employee. All they can do effectively is disbar, like by their contractual relationship, advanced towing. Advanced towing has to make a decision as to whether they're going to keep their contract with AAA or whether they're going to fire Mr. Prescott. And if Mr. Prescott's got a FCRA claim, it's a claim against higher right. I don't understand how he's got standing to sue AAA. Well, Your Honor, the question is whether by implementing this policy, by having this desire and purpose to use Mr. Prescott's report, whether the Auto Club and AAA stepped into the role of the employer here. Traditionally, the decision as to whether somebody meets the criteria. I thought this is one of the arguments, and I really want you to answer Judge Vibey's question, but just to be clear, your theory on this shifted over time and the district court was concerned. So are you back to the theory that he was somehow a common law employee of AAA? No, Your Honor. Okay, so that's fine. Please go ahead and then answer Judge Vibey's question. I'll listen carefully. How is it that you're contending that they have the ability to fire this man? He's not their employee, right? That is correct, Your Honor. So the question is whether a non-employer can take an employment purpose adverse action against an employee of another company. Of an affiliated company, that's all it is. Or another company. I don't think that the case law actually restricts the taking of an adverse action to employers or even affiliated companies here. The plain language of the statute is clear as to who can take an adverse action, is the person intending to take an adverse action. If the Congress wanted to restrict the taking of an adverse action to employers, it would have used the word employer as it did elsewhere in the statute. But it doesn't do that here. The term person is broadly defined to include any individuals, corporations, or even associations. As in American Automobile Association. But you're under here under an adverse action. And the adverse action section that's applicable here is the denial of employment. And it refers to employment purposes and a prospective employee. But Mr. Prescott is not an employee of AAA. That's, I mean, that's, you had a prior theory, that common law theory, that would have made him an employee of AAA for some purposes. You're not, you're not defending that here today. No, Your Honor. So how is it that Mr. Prescott can be deemed an employee of AAA? Or do you want to adopt a theory that there's a chain of events here, and that simply because AAA has this policy that somehow affects Mr. Prescott, that he can suit all the way back up the line? That's a very broad, very aggressive reading of FCRA. But that seems to me that's probably your point. Yes, Your Honor. That is a plain reading of the statute, I think. Under Hope Force's, the Retail Credit Corporation, that case involved licensing agency. And whether the report that's provided to licensing agency can be considered as an employment purpose consumer report. And the court said, yes, of course it can be, under the plain language of the statute. I don't have a lot of time, but let me talk about why I make such a broad statement. Or why the theory is so broad. It's because the statute itself is broad. One of the central aspects of the Fair Credit Reporting Act is that it's disjunctive in nature, which is the point that was argued by Prescott in the court below, and also in the opening brief. And I don't think that it's so nuanced. The idea is that either a person has a permissible purpose for the report, and therefore all the corresponding duty to protect the consumer that comes with it, or the person has neither. It's a disjunctive either or. There's no middle ground here. If there is a middle ground, as the Auto Club would be arguing here, then it means a person could obtain a consumer report and use it, but not have any responsibility for it. The question then is, did the Auto Club use a consumer report for employment purposes? Did they do that? Did they know that by setting up this policy, that it would have an adverse impact on Mr. Prescott's employment? Of course they did. Now... I'm sorry. If you would... You've used your time, so if you could wrap up this point, and we'll give you a little time for rebuttal as well. Yes, Your Honor. This is getting at one of the concerns that Judge Reinhart had in Reynolds, which is the of a consumer report, then we don't have an increased prospect for ensuring that the consumer would receive a notice and find out about the manner in which his report was used to adversely affect him. If we say here that only employers have the duty to provide a pre-adversation notice to the consumer, then it means that adverse actions taken by non-employers would not generate either a pre-adversation notice or a post-adversation notice, and the consumer would be left in the dark, as Mr. Prescott would have been if that reverse hypothetical that I gave you earlier happened. Thank you, Counsel. We'll hear from the other party. Good morning, Your Honors. Margaret Grignio for the defendants. Let me start by also setting out the context. The Automobile Club, which is really the company that enters into the contract with the towing company, has a criminal background policy that is part of its independent contractor contract. That has been the policy since 2004, and it didn't really change except in one really significant way. In 2004, the policy required that the employer would certify that it was in compliance with the background check policy, but the Auto Club didn't have any way of checking that. It just had to take the employer's word for that. Apparently, problems ensued, so in 2011, they changed the policy to give the Auto Club a method for determining whether the verification or verifying... To require it, right? To require it. Yes, to require it. So at that point, what happens is that Auto Club just has access to these pass-fail determinations that they access once a year in determination of whether the contract should be renewed with the towing company. The towing company gets the consent from its employee for the background check. The towing company sends that with a contract that the towing company has with Higher Right to run the background check. Higher Right runs the background check, gives it back to the employer, and the employer takes whatever adverse action the employer is going to take based on that. The only information that the Auto Club has, and AAA, the National Association, has no information, is that once a year, it can go on a portal and compare the employees of the employer with the pass-fail determinations to make sure that the verification is correct. There is no adverse employment action that is taken by the Auto Club. It certainly causes the actual employer to take an adverse action. It causes the employer to comply with the background policy. Auto Club adopts this policy because people are coming out on the streets... Well, it doesn't matter whether it has a good reason or it doesn't. It's entitled to have the policy as far as the law is now concerned and as a matter of contract. So, regardless of the justification for the policy, the existence of the policy and the existence of a negative report are causally linked to a person losing their job. That's the claim, at least, in terms of standing. Now, whether they can avoid those consequences is another question, but I don't understand why that isn't an adverse action within the meaning of the statute. It's not an adverse action taken by the Auto Club, Your Honor. It is, instead, simply what happens because there's a background policy and the employer has decided to contract with the Auto Club. Could advanced towing have simply canceled its contract with AAA? Of course. And would there have been consequences? Would AAA then have a damage suit for breach of contract? No, Your Honor. These are annual contracts that anybody can terminate on sufficient notice and there's no breach of contract action. Presumably, they would have been talking themselves out of some very valuable work. Yes. They shouldn't have had an incentive to stay in the program. What if higher rights report had contained information that, while not inaccurate, was under California law to be reported, that is, that the extent of the report exceeded the law in California? Does AAA still get to go to advanced towing and say, you've got to fire this guy? Your Honor, could I just point out that AAA did not, or the Auto Club did not go to advanced towing at all. There is no communication between the Auto Club and advanced towing at any time during this process. But the question is different. The question is a different question. If the report had shown something that California doesn't allow them to show, even if it's accurate, but California doesn't allow it after a certain period of time to be reported out and he was entitled to a clean slate, what if that had happened? Then higher right is responsible for violating FCRA. That they would have, I'm sorry, they would have prepared a report that was against the law. And they're the ones that would have, they're the ones that would... Would Mr. Prescott have an action against higher right? Yes, of course. And he did have an action. Under that adverse action provision? No, under a different action about providing an illegal, it may have been even under California law because it's not illegal. It would be the same as if they had prepared an inaccurate report. Is that correct? Yes. Although, to be honest with you, Your Honor, I don't know whether such a report would violate FCRA or California law. But here, if it violated FCRA, yes, they would have a claim against higher right. And they did have a claim against higher right. And they don't have it anymore. That claim was discharged in bankruptcy? It was. So what about, I'm trying to tease out something again. I mean, it is a hypothetical. But what if the AAA and Auto Club had a policy that required a fact to be reported out and it acknowledged, we understand that California law says otherwise, but we want to know. Would there be a claim there against them? Against the two clubs? If they had an illegal policy, is what you're saying. Yeah. That's exactly what I'm saying. There would be a claim. They relied on a negligent mistake by higher right. Higher right simply prepares a report and says, well, we've got this 10-year-old conviction, no probation at issue here. And does AAA have the right to go to advanced towing and say, you still have to fire this guy? I would say no. But I would also say that there's no evidence in the record that AAA or the Auto Club does that. In other words, they check. So let's say higher right has this report that's not compliant and it does a wrong, then pass-fail determination, and then the employer doesn't fire him. The only evidence there is in the record is that Auto Club, when it checks annually, goes and talks to them. So all we have is that there would be some conversation between the Auto Club and advanced towing. And would it be the Auto Club's policy not to renew advanced towing's contract for the following year if they knew that they had an employee who had a record, even if the record was older than seven years and could not be reported under FCRA? No, Your Honor. The Auto Club has no policy that is in violation of the law. Its policy is intended to be and is in compliance with the law. Well, it wouldn't be – it's not illegal to say I don't want to hire you because you're a felon, even if it's older than 10 years. All we're talking about is the reporting requirements, what is permitted and what is not permitted in California. I'm asking a slightly different question. But the – Would AAA be able to – would it be within AAA's own policies to say advanced towing, no contract for this next year as long as you've got this guy? We don't care that it's not going to show up on his sticker report. We know about it. It would not, Your Honor. The policy itself incorporates the time limitations, the seven years from the date of probation terminates. So the policy is entirely compliant with the law. So you're very clear that you think his claim prevails on the merits. Do you want to talk about standing? Yes, Your Honor. It is the defendant's position that he has not shown any actual injury as a result of anything that the Auto Club did. So as a result of any claim against the Auto Club, there is no injury because the report was accurate. He got notice. He got a chance to talk about it with his employer. The employer and Mr. Prescott sent letters to the Auto Club. And therefore, there's no injury. And he does not have Article III standing for purposes of this appeal. What he argues today is that he's got an argument that he should have been able to because his probationary status shouldn't have been reflected on the report. That that's what he lost, the ability to make that argument. But, Your Honor, he doesn't have a right. In other words, the report was clean. That's on the merits, right? Doesn't that go to the merits? Possibly, Your Honor. Possibly. To me, it seems like he either has a right or he doesn't have a right.  That's sort of in the gray zone about whether or not that report should or should not have been claimed. Would you concede that he's got standing? Yes, Your Honor. Going back, I'm just going to go back quickly to the statute for a moment. And the statute does say that this statute has to do with reports that are used by someone intending to have an adverse employment action for employment purposes. That's what we're talking about here. But AAA's intent is to cause an employment action. I mean, the whole point of the policy is that you want the people with whom you have a relationship to hire and fire certain people depending on their criminal background check. That's the whole point of the policy is about employment. So, I still don't understand your position that it doesn't fall within the statute. It's just a little tenuous, Your Honor. And the connection is tenuous. And there is no direct relationship between the employment status of Mr. Prescott and the Auto Club's policy. Auto Club adopts a policy that is company-wide. It applies to all independent contractors. They don't know anything about Mr. Prescott. They don't know who he is. They don't know when his background check is being run. They don't know when he gets the results. They don't know what the results are. They don't know any of this. And so, other than if you were to say that adopting the policy is an adverse employment action, there is nothing that Auto Club does that impacts Mr. Prescott's employment. And no court has ever said that adopting a background policy for your independent contractors constitutes an adverse employment action. And that's all we have here is adopting the policy and requiring the employers to certify that they have, in fact, complied with that policy. And for that reason, I think that the Auto Club does not take action for employment purposes. They take action to verify their independent contractor certifications, and they do not fall within the statute. About employment. Pardon me? About who's employed. Yes. Many steps removed, but yes, Your Honor. Are there no other questions? I don't believe so. Thank you. I'm sorry. Can I just say one last thing? I forgot to say, under no circumstances is this willful. In other words, we don't think there's any violation at all, but there's simply no case law at all that indicates that this would be a willful violation. Thank you. Thank you. Mr. Kim, you may have a minute for rebuttal. Thank you. On the question of willfulness, as the court in Syed v. M.I. made clear, the very first question to ask is whether there's any ambiguity in the statute that gives rise to the safe for safe harbor. Syed did not reach any question about the existing case law because the plain language was clear. Now, plain language is clear, as interpreted by Hope v. Retail Credit Corporation, the Fourth Circuit case, that this, in fact, is an employment purpose credit report. Now, let me leave you with one hypothetical. Now, if AAA or the Auto Club wanted to use Mr. Prescott's report for their own benefit and didn't involve advanced towing as an intermediary to obtain the report and use it, then the AAA would have had to argue that they had an employment purpose for this, and they did because the decision they wanted to make was an evaluation for the purpose of determining Mr. Prescott or the consumers eligible to work at advanced towing. And any adverse decision they made on that basis, yes, you meet our criteria, or rather you fail to meet our criteria, would have been an adverse action for employment purposes for that reason. Both the procurement purpose, employment purpose, and the use employment purpose, they go hand in hand together. Those phrases must be consistent. They're used consistently within the same statute. If advanced towing, if the Auto Club had the permissible purpose to obtain the report, then that permissible purpose gives rise to the duty to provide a notice, and decision that they wanted to make is the adverse action. Thank you, counsel. The case just argued is submitted, and we appreciate the arguments of both of you.
judges: Graber, Bybee, Christen